UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GORDON STOCKENAUER,

    Plaintiff,

v.                                                                  Case No. 2:05-cv-293
                                                                     HON. R. ALLAN EDGAR

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Gordon Stockenauer, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden D. Bergh, Resident Unit Officer P. Basal, Assistant Deputy Warden Unknown Immel, Resident Unit Officer Unknown Sharrett, Resident Unit Officer Unknown Miron, Resident Unit Manager Brian Holman, Sergeant D. Hursh, and Resident Unit Manager Unknown Tweedale, all of whom were employed by the MDOC at LMF during the pertinent time period. In addition, Plaintiff names the Michigan Department of Corrections (MDOC) as a Defendant.

As noted by Defendants in their brief in support of the motion to dismiss, Plaintiff's complaint and amended complaint consist of voluminous pages of handwritten pleadings, written in a confusing stream of consciousness style. In the complaint, Plaintiff alleges that he lost a jury trial in December of 2004 in *Stockenauer v. Sigman*, Case No. 97-cv-70619. Plaintiff's subsequent motions for reconsideration were denied on January 6, 2005, and August 16, 2006. Plaintiff claims that the Defendants in this case are like family to two of the Defendants in *Sigman*. Consequently, Plaintiff claims that the Defendants retaliated against him for pursuing his claims in the *Sigman* case.

Specifically, Plaintiff claims that on August 2, 2005, Defendant Basal removed staples from a motion for relief from judgment in the *Sigman* case and read the motion, threatening that Plaintiff would be harmed if he continued with the motion against her "friends." Plaintiff also claims that Defendant Basal caused Plaintiff to be fired from his porter job after he found legal documents belonging to another prisoner in the trash on September 9, 2005. When Plaintiff received a major misconduct, he insisted on obtaining a videotape to show that he had not done anything wrong, but Defendant Basal told him that Captain Immel loved her "pussy" too much to help Plaintiff. Defendant Basal then told Plaintiff that she was going to "set him up" with a ticket for possession of dangerous contraband on shower day. On September 11, 2005, Resident Unit Officer Binning told Plaintiff that he knew Plaintiff had a state ink pen filler wrapped up in paper, and told him to throw it out onto the A-wing floor, or get a contraband ticket. Plaintiff complied with the order. Following that, Defendants Basal and Resident Unit Officer Dahlstrom put the ink pen filler in Plaintiff's cell and charged him with a major misconduct.

On September 27, 2005, Defendant Basal brought Plaintiff a copy of the hearing report and threatened to have Defendants Miron or Holman or Mr. Binning physically harm Plaintiff because of his insistence of having videotapes at the hearing. On the same day, Plaintiff and inmate Michael Lanning submitted a request to enter into a legal assistance agreement. Plaintiff had already drafted some documents on behalf of inmate Lanning. On September 28, 2005, Defendant Tweedale and Mr. Binning discovered these documents and confiscated them. Plaintiff claims that he sent out several pleadings for inmate Lanning using his indigent legal postage between October 3, 2005, and October 6, 2005. On October 6, 2005, Defendants Bergh, Immel, and Sharrett told Plaintiff and inmate Lanning that their request for a legal agreement form had been lost, and that they needed to complete a new form. In addition, Mr. McBurney told them that Lanning had two prior approved

Legal Assistance Agreements with other inmates, and that because McBurney was a friend of Defendant Sharrett, he was going to do whatever he could to get any legal agreement between Plaintiff and Lanning disapproved. The legal assistance request was subsequently denied.

Finally, Plaintiff claims that Defendants conspired to harm Plaintiff by "hiring" inmate Larry McGee, who has HIV or Hepatitis C, to assault Plaintiff with his feces while in the yard. Plaintiff fears that he has contracted Hepatitis as a result of this attack. Plaintiff claims that Defendants' conduct violated his rights under the constitution. Plaintiff seeks compensatory and punitive damages.

Presently before the Court is Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal

conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted). In addition, Plaintiff has filed a Motion for Joinder of Remedies and Claims (docket #183).

In their motion to dismiss, defendants contend that Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See also Booth v. Churner*, 121 S. Ct. 1819, 1823-24 (2001). A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Booth*, 121 S. Ct. at 1823; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 121 S. Ct. 634 (2000); *Hartsfield v. Vidor*, 199 F.3d 305, 308 (6th Cir. 1999); *Wyatt*, 193 F.3d at 878-79; *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

Plaintiff's claims against the named defendants are the type of claim that may be grieved. *See* MDOC Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement"); ¶ II (may grieve brutality and corruption by prison staff) (effective Oct. 11, 1999 and November 1, 2000). A prisoner must specifically mention the involved parties in the grievance to alert the prison officials of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 491, 505 (6th Cir. 2001).

A prisoner must allege and show that he has exhausted all available state remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 121 S. Ct. 634 (2000). A prisoner must make particularized averments as necessary for the district court to determine what, if any, claims have been exhausted or what has been done in an attempt to exhaust the claims. *Id.*

In the motion to dismiss, Defendants contend that Plaintiff's allegations did not constitute "imminent danger" at the time his complaint was filed. Therefore, Defendants maintain that plaintiff's pauper status should be vacated and Plaintiff should be required to pay the filing fee. As noted by Defendants, Plaintiff's allegations of imminent danger include the claim that he received a misconduct to terminate the Legal Assistance Agreement with inmate Lanning on October 27, 2005, and that Defendants ordered inmate McGee, who had Hepatitis and possible HIV, to assault Plaintiff with his feces while in the yard on November 5, 2005. In addition, Plaintiff claims that he received a threat from unnamed staff that they were going to let inmate McGee assault him again on December 23, 2005, after McGee's yard restriction ended. Plaintiff also states that he was unable to obtain grievances after November 5, 2005, so that he was continuously under an imminent threat of danger.

The undersigned notes that although Plaintiff's claims regarding the misconduct ticket and grievance restriction do not constitute imminent danger, his claim that Defendants induced an inmate who has Hepatitis to assault him with feces and threatened to do so again does constitute imminent danger. Therefore, in the opinion of the undersigned, Defendants' request to have Plaintiff's pauper status vacated is properly denied.

Defendants further state that Plaintiff has failed to attach copies of his grievances. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). A prisoner must make particularized averments as necessary for the district court to determine what, if any, claims have been exhausted or what has been done in an attempt to exhaust the claims. *Id.* In addition, a prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006)*; Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *accord Harbin-Bey v. Rutter*, 420 F.3d 571, 581 (6th Cir. 2005); *Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir.

Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

In order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims at Step I. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). However, where a prisoner has set forth a claim in his Step I grievance, he may present additional factual detail at Steps II and III that clarify his allegations at Step I, as a means of justifying his appeal. *Id.* Raising allegations against a particular defendant for the first time at Step II or III is insufficient to demonstrate exhaustion. *Id.* at 576 n.4.

The burden to allege and show exhaustion belongs to Plaintiff. *See* 42 U.S.C. § 1997e(a); *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104. This requirement is "so that the district court may intelligently decide if the issues raised can be decided on the merits." *Knuckles El*, 215 F.3d at 642. An allegation that remedies have been exhausted is not enough, as a plaintiff must provide the decisions reflecting the administrative disposition of his claims or other evidence showing that he has exhausted his remedies. *Williams v. McGinnis*, No. 98-1042, 1999 WL 183345, at *1 (6th Cir. March 16, 1999). The Sixth Circuit has found that the district court is not required to hold evidentiary hearings on the issue of exhaustion or "spend a lot of time with each case just trying to find out whether it has jurisdiction to reach the merits." *See Knuckles El*, 215 F.3d at 642.

Defendants contend that Plaintiff listed five grievances in a letter to MDOC Director Caruso and attach copies of the step I forms for these grievances as exhibits to their brief. A review of these grievances reveals that they name Defendant Basal and refer to the alleged retaliatory job termination which occurred on September 9, 2005. Plaintiff does not name Defendants Bergh, Immel, Miron, Sharrett, Holman, Hursh, or Tweedale in his step I grievances. Therefore, Defendants claim that Plaintiff failed to exhaust his claims against those Defendants. However, the undersigned

notes that a review of the attachments to Plaintiff's complaint reveal that he repeatedly requested grievance forms while on modified access, and that he specifically named Defendants Bergh, Basal, Immel, Sharrett, Miron, Hursh, and Tweedale in his requests. However, it does not appear that Plaintiff named Defendant Holman in his grievance form requests. Therefore, it appears that Defendants are correct in asserting that Plaintiff failed to exhaust his administrative remedies against Defendant Holman. Consequently, the undersigned concludes that Plaintiff's claims against Defendant Holman are properly dismissed for failure to comply with the exhaustion requirement.

The remaining Defendants argue that this case should be dismissed under the total exhaustion rule as set forth by the Sixth Circuit in *Jones-Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005). However, another panel of the Sixth Circuit has more recently held that *Jones-Bey* was improperly decided. In *Spencer v. Bouchard,* 449 F.3d 721 (6th Cir, June 6, 2006), the court held that the "partial exhaustion rule" is the law of this Circuit requiring the dismissal of only those claims that are unexhausted and allowing the case to proceed on the exhausted claims. Since the Sixth Circuit is unable to affirmatively decide this issue, the safest course is to follow this newly established "partial exhaustion rule," until the Supreme Court hopefully resolves this issue later this term in *Williams v. Overton*, 126 S.Ct 1463; *Jones v. Bock*, 125 S.Ct. 1462 (2006).

Defendants state that they are entitled to dismissal of Plaintiff's claims with regard to the September 11, 2005, major misconduct ticket. Defendant Basal issued two misconduct charges on September 11, 2005, and Plaintiff was found guilty at a hearing held on September 26, 2005. The Supreme Court has held that a claim for declaratory and injunctive relief, as well as for monetary damages, based upon allegations of deceit and bias on the part of the decisionmaker that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court relied

upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

The Supreme Court revisited this issue in *Wilkinson v. Dotson*, 125 S. Ct. 1242 (Mar. 7, 2005), a case in which the plaintiffs claimed that the retroactive application of parole guidelines violated the Constitution's *Ex Post Facto* and Due Process Clauses. The plaintiffs sought a new parole eligibility review and a new parole hearing in accordance with the correct guidelines. *Wilkinson*, 125 S. Ct. at 1244. In *Wilkinson*, the Court discussed the effect of its decisions in *Heck* and *Edwards*, as well as *Preiser v. Rodriguez*, 411 U.S. 475 (1973) and *Wolff v. McDonnell*, 418 U.S. 539 (1974) on the issue:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement–either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks–not where it simply "relates to"– "core" habeas corpus relief, *i.e.,* where a state prisoner requests present or future release. Cf. *post,* at ----5 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate . . . to" the duration of confinement). *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's

> suit (state conduct leading to conviction or internal prison proceedings)–*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson*, 125 S. Ct. at 1247-48. The Court then concluded that because the plaintiffs' claims did not necessarily imply the invalidity of their convictions or sentences, they could present these claims in the context of a § 1983 action. *Id.* Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Wilkinson*, 125 S. Ct. at 1247-48; *Edwards*, 520 U.S. at 646.

In *Muhammad v. Close*, 124 S. Ct. 1303 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004). In other words, *Edwards* still applies where a plaintiff has lost good time as the result of the misconduct conviction. Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated credits. *Id.* Plaintiff does not assert that he did not forfeit good time credit for the month of his conviction. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004). Therefore, the undersigned recommends dismissal of all of Plaintiff's claims regarding the September 11, 2005, misconduct charges.

In summary, in the opinion of the undersigned, Plaintiff's claims against Defendant Holman are barred by the exhaustion requirement in 42 U.S.C. § 1997e(a). In addition, Plaintiff's claims regarding the September 11, 2005, misconduct charges are barred by the doctrine set forth

in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) and *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Accordingly, it is recommended that Defendants' Motion to Dismiss (docket #164) be granted with regard to Defendant Holman and the claims regarding the September 11, 2005, misconduct charges and denied with regard to the remaining Defendants and claims.

In addition, Plaintiff has filed a motion for joinder of remedies and claims. In the motion, Plaintiff seeks to join the Michigan Department of Corrections and MDOC Director Patricia Caruso as Defendants for the sole purpose of making them liable for payment of attorney fees under 42 U.S.C. § 1988 should Plaintiff prevail in this action. As noted by Defendants in their response, a *pro se* litigant is not entitled to an award of attorney fees under 42 U.S.C. § 1988. *Coleman v. Turner*, 838 F.2d 1004, 1005 (8th Cir. 1988) (*citing Davis v. Parratt*, 608 F.2d 717 (8th Cir. 1979). In addition, the United States Supreme Court has acknowledged that a *pro se* litigant who is not a lawyer is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991). Therefore, the undersigned recommends that Plaintiff's motion for joinder (docket #183) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: October 27, 2006