UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GORDON STOCKENAUER,

    Plaintiff,

v.                                            Case No. 2:05-cv-293
                                                    HON. R. ALLAN EDGAR

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Gordon Stockenauer, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants Warden D. Bergh, Resident Unit Officer P. Basal, Assistant Deputy Warden Unknown Immel, Resident Unit Officer Unknown Sharrett, Resident Unit Officer Unknown Miron, Resident Unit Manager Brian Holman, Sergeant D. Hursh, and Resident Unit Manager Unknown Tweedale, all of whom were employed by the MDOC at LMF during the pertinent time period. In addition, plaintiff names the Michigan Department of Corrections (MDOC) as a defendant.

In the complaint, plaintiff alleges that he lost a jury trial in December of 2004 in *Stockenauer v. Sigman*, Case No. 97-cv-70619. Plaintiff's subsequent motions for reconsideration were denied on January 6, 2005, and August 16, 2006. Plaintiff claims that the defendants in this case are like family to two of the defendants in *Sigman*. Consequently, plaintiff claims that the defendants retaliated against him for pursuing his claims in the *Sigman* case.

Specifically, plaintiff claims that on August 2, 2005, defendant Basal removed staples from a motion for relief from judgment in the *Sigman* case and read the motion, threatening that plaintiff would be harmed if he continued with the motion against her "friends." Plaintiff also claims that defendant Basal caused plaintiff to be fired from his porter job after he found legal documents belonging to another prisoner in the trash on September 9, 2005. When Plaintiff received a major misconduct, he insisted on obtaining a videotape to show that he had not done anything wrong, but Defendant Basal told him that Captain Immel loved her "pussy" too much to help plaintiff. Defendant Basal then told plaintiff that she was going to "set him up" with a ticket for possession of dangerous contraband on shower day. On September 11, 2005, Resident Unit Officer Binning told plaintiff that he knew plaintiff had a state ink pen filler wrapped up in paper, and told him to throw it out onto the A-wing floor, or get a contraband ticket. Plaintiff complied with the order. Following that, defendant Basal and Resident Unit Officer Dahlstrom put the ink pen filler in Plaintiff's cell and charged him with a major misconduct.

On September 27, 2005, defendant Basal brought plaintiff a copy of the hearing report and threatened to have defendants Miron or Holman or Mr. Binning physically harm Plaintiff because of his insistence of having videotapes at the hearing. On the same day, plaintiff and inmate Michael Lanning submitted a request to enter into a legal assistance agreement. Plaintiff had already drafted some documents on behalf of inmate Lanning. On September 28, 2005, defendant Tweedale and Mr. Binning discovered these documents and confiscated them. Plaintiff claims that he sent out several pleadings for inmate Lanning using his indigent legal postage between October 3, 2005, and October 6, 2005. On October 6, 2005, Defendants Bergh, Immel, and Sharrett told plaintiff and inmate Lanning that their request for a legal agreement form had been lost, and that they needed to complete a new form. In addition, Mr. McBurney told them that Lanning had two prior approved

Legal Assistance Agreements with other inmates, and that because McBurney was a friend of defendant Sharrett, he was going to do whatever he could to get any legal agreement between Plaintiff and Lanning disapproved. The legal assistance request was subsequently denied.

Finally, Plaintiff claims that defendants conspired to harm plaintiff by "hiring" inmate Larry McGee, who has HIV or Hepatitis C, to assault plaintiff with his feces while in the yard. Plaintiff fears that he has contracted Hepatitis as a result of this attack. Plaintiff claims that defendants' conduct violated his rights under the constitution. Plaintiff seeks compensatory and punitive damages. The court has previously dismissed plaintiff's claims regarding his September 11, 2005, misconduct ticket.

Defendants move for summary judgment on the remaining claims. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether

there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that defendant Basal removed staples from a motion for relief from judgment and read his motion on August 2, 2005. Plaintiff filed the motion and it was denied by the court on September 24, 2005. Defendant Basal denies this incident. In the opinion of the undersigned, plaintiff cannot support a retaliation claim on this incident. Even if true, the act of reading a motion and removing staples could not deter a person of ordinary firmness from engaging in litigation activities. Moreover, plaintiff cannot show a violation of his rights to access the courts. Plaintiff filed the motion and the motion was denied.

Plaintiff was fired from his porter job because he was observed passing papers under his cell door to another prisoner. A work evaluation was completed by defendant Basal and

termination was requested because this was against the porter rules and is a strictly enforced rule. In the opinion of the undersigned plaintiff has not rebutted the showing that his termination was justified. Plaintiff's retaliation claim on this issue should be dismissed.

Plaintiff alleges that he was retaliated against when a Legal Assistance Agreement for plaintiff to assist prisoner Lanning was denied. The Agreement was denied because prisoner Lanning did not need legal assistance since he provided legal assistance to other prisoners. Further, plaintiff has no constitutional right to provide legal assistance to other prisoners. In the opinion of the undersigned, this claim fails.

Plaintiff alleges that defendants conspired to have prisoner McGee throw feces on him. Plaintiff has presented no basis for the court to conclude that defendants had any involvement in the actions of prisoner McGee. Moreover, prisoner McGee was charged with a major misconduct and found guilty. Further, plaintiff instigated the incident by spitting on prisoner McGee.

Defendants argue that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known;

finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held

>    unlawful, but it is to say that in light of the preexisting law the
>    unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

>    The Sixth Circuit has observed:
>
>    A right is not considered clearly established unless it has been
>    authoritatively decided by the United States Supreme Court, the Court
>    of Appeals, or the highest court of the state in which the alleged
>    constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendants are entitled to qualified immunity because plaintiff has failed to show that defendants violated his rights.

Accordingly, it is recommended that defendants' motion for summary judgment (Docket #252) be granted and plaintiff's complaint be dismissed.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley  
      TIMOTHY P. GREELEY  
      UNITED STATES MAGISTRATE JUDGE

Dated: February 13, 2008